WYATT v. JAMES McCREERY CO.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. STATUTES—PARTIAL INVALIDITY—EFFECT—INJUNCTION—PERSONAL RIGHTS —PRIVACY.

Laws 1903, p. 308, c. 132, § 2, authorizing a suit to restrain the use for advertising purposes of a person's picture and for damages, unless the written consent of such person, or, if a minor, of his parent, has been previously obtained, is valid so far as it regulates the right to use the picture of another, though it should be conceded that section 1 thereof, making the use of a person's picture for advertising purposes, without such written consent, a misdemeanor, is invalid, and that any restriction as to the right of one to dispose of his own picture is invalid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 58–66.]

2. SAME—OBLIGATION OF CONTRACTS.

That a statute is inoperative so far as it affects contracts existing at the time it took effect does not justify the court in holding the act unconstitutional as affecting contracts made subsequent thereto.

3. CONTRACTS—FORMAL REQUISITES—NECESSITY OF WRITING—STATUTES—POWER OF LEGISLATURE.

The Legislature may require that contracts to be enforceable or valid shall be in writing.

4. INJUNCTION—PROTECTION OF PRIVATE RIGHTS—PRIVACY—STATUTES.

Laws 1903, c. 132, authorizing a suit to restrain the use for advertising purposes of a person's picture and for damages unless the written consent of such person, or, if a minor, of his parent or guardian has been previously obtained, is valid so far as it requires one before using the picture of an infant to obtain the consent in writing of the parent or guardian.

Appeal from Trial Term.

Action by Helen Wyatt, an infant, by Minnie Wyatt, her guardian ad litem, against the James McCreery Company. From an interlocutory judgment sustaining a demurrer to the second separate defense of the answer, defendant appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Learned Hand, for appellant.

Melville H. Cane, for respondent.

INGRAHAM, J. This action was brought under chapter 132, p. 308, Laws 1903. The complaint alleges that the defendant is a domestic corporation, engaged in the retail business of selling dry goods, objects of art, household decorations, and other wares in the city of New York; that for several weeks in the autumn and winter of 1906 the defendant "publicly, knowingly, and without the consent, written or otherwise, of the plaintiff, or of her parent or guardian, have used, displayed, circulated, and offered for sale the portrait, picture, or photograph of the plaintiff," and "have used, displayed, circulated, and published on the said portraits, pictures, and photographs and every copy thereof the name of said plaintiff"; and that plaintiff has been injured thereby in the sum of $5,000, for which she demands judgment, and also asks that the defendant be restrained and enjoined from using the photograph, picture, or portrait of

the plaintiff in any form whatsoever for the purpose of trade or for advertising or for any other purpose. The defendant, after denying the material allegations of the complaint, alleges as a separate defense that the plaintiff applied to one Hall, a photographer, to have her photograph taken in the ordinary course of his business as such photographer; that the plaintiff, in consideration of the reduced rate or price made to her by said Hall, orally agreed with said Hall that he should have the right to sell, give away, or dispose of or otherwise use a copy of the plaintiff's said photograph in the general course of his business for profit or otherwise at his pleasure and in his discretion; that, under such agreement, the said Hall took a photographic representation of the plaintiff which is the original of the photograph mentioned in the complaint; that for a long time it had been the custom in the photographic trade or business well known in the city of New York and well known to the plaintiff that persons engaged in said photographic trade or business make photographs of actors or actresses at a rate known as a professional rate, and the person receiving the photograph at such professional rate relinquishes and gives up to the photographer taking the photograph the right to reproduce such photograph, and to sell, give away, or otherwise dispose of the same in the course of his business or otherwise; that plaintiff was known to the public as a professional, and had appeared before the public as an actress or otherwise, and at her request obtained such photographs at such reduced or professional rate with knowledge of the said custom, and that the plaintiff thereupon orally authorized said Hall to reproduce and use her said photograph, and orally waived any and all right which she had or might have had under chapter 132, p. 308, Laws 1903, and that she is now estopped from asserting any such rights. This defense was demurred to by the plaintiff, which demurrer was sustained, and, from the judgment entered thereon, the defendant appeals.

By the first section of the statute in question a person, firm, or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait, or picture of any living person without having first obtained the written consent of such person, or, if a minor, of his or her parent or guardian, is guilty of a misdemeanor. By section 2 of the act it is provided that:

"Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the Supreme Court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use, and if the defendant shall have knowingly used such person's name, portrait, or picture in such manner as is forbidden or declared to be unlawful by this act, the jury, in its discretion, may award exemplary damages."

This act became a law April 6, 1903, and was to take effect on September 1, 1903. The objection of the defendant to this act is that it is a violation of sections 1 and 6 of article 1 of the Constitution of this state; and section 10, art. 1, Amend. 14, Const. U. S., which is to the effect that no person shall be deprived of the rights or privi-

leges secured to any citizen unless by the law of the land or the judg-
ment of his peers, or be deprived of life, liberty, or property without
due process of law, nor shall any state deny to any person within its
jurisdiction the equal protection of its laws nor enact any law impair-
ing the obligation of contracts, and the principle evoked by the ap-
pellant is that applied in Fisher Co. v. Woods, 187 N. Y. 90, 79 N.
E. 836, 12 L. R. A. (N. S.) 707. In that case the court, discussing
the police power of the state, said:

"The power must be exercised subject to the provisions of both the state
and federal Constitutions, and the laws passed in the exercise of such power
must tend, in a degree that is perceptible and clear, toward the preservation
of the public safety or the lives, health, and morals of our inhabitants or
the welfare of the community. But the Legislature cannot arbitrarily infringe
upon the liberty or property rights of any person living under the Constitu-
tion nor prevent him from adopting and following any lawful profession,
trade, or industrial pursuit not injurious to the community that he may see
fit; nor prevent him from making contracts with reference thereto. To justi-
fy the state in interposing its authority in behalf of the public, it must appear
that the interest of the public generally, as distinguished from those of a
particular class, require such interference, and that the means are reasonably
necessary for the accomplishment of the purpose and not unduly oppressive
upon individuals. * * * Liberty, in its broad sense, means the right, not
only of freedom from servitude, imprisonment, or restraint, but the right of
one to use his faculties in all lawful ways, to live and work where he will, to
earn his livelihood in any lawful calling, and to pursue any lawful trade
or avocation."

And then, after discussing the particular statute then under review,
which made it a misdemeanor for any person to offer for sale any
real property without the written authority of the owner, said:

"The act in question does not purport, nor is it intended, to protect the
purchaser of real property. * * * If, therefore, the Legislature, in the
exercise of its police powers, may, by this act, lawfully make it a misdemeanor
for a person to render services to an owner in procuring a purchaser without
his written authority, it may also provide that a lawyer should be guilty
of a misdemeanor for drawing a contract for a client, or for rendering him
any other service, without having authority therefor in writing. It would
also be competent to place like restrictions upon every employé in every
trade and occupation. * * * It is an arbitrary infringement upon the
liberty and rights of all persons who choose to engage in such occupation.
Had the act been for the purpose of regulating the business of brokerage, or
a statute of frauds, a different question would have been presented, but it is
neither. It relates, as we have seen, to any and every person, and, instead
of making the oral contract void, it makes the person employed guilty of a
misdemeanor, and punishable as a criminal."

The question whether section 1 of the act which makes a person
violating its provisions guilty of a misdemeanor was a violation of the
constitutional provisions, which was the question presented in Fisher
Co. v. Woods, supra, is not involved on this appeal, and is not there-
fore considered; and it may well be that section 1 would be held a
violation of the Constitution without involving a similar determina-
tion as to section 2 of the act. Section 2 is designed for the protection
of individuals, and not merely an exercise of the police power for the
protection of the public or the community. The right of an individ-
ual to control the use by others of a photographic or other reproduc-
tion of his photograph or portrait was presented to the Court of Ap-

peals in the case of Roberson v. Rochester Folding Box Company, 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828. That case, while holding that an individual was not entitled as the law then stood to the interposition of a court of equity to restrain the publication of a likeness of himself, expressly recognized the right of the Legislature to prevent the use of the picture or name of another for advertising purposes without his consent. The Chief Judge, in delivering the opinion of the court, said:

"The legislative body could very well interfere and arbitrarily provide that no one should be permitted for his own selfish purpose to use the picture or the name of another for advertising purposes without his consent."

And, although there was a strong dissent which disagreed with the court in holding that without a statute upon the subject a court of equity had no jurisdiction to enjoin the unauthorized use of a person's portrait, there was no intimation of any doubt as to the right of the Legislature to give to an individual the right to apply to a court of equity for protection from an unauthorized act which although not involving injury to property, is yet calculated to produce mental distress and incidentally to affect the character or future prospects of the individual. It has always been recognized that the liberty of an individual which is protected by both the state and federal Constitutions is not to be extended so as to allow an interference with the liberty or rights of others; and, while each individual has the undoubted right to dispose of his own property as he pleases so long as such a disposition does not interfere with the rights or property of others, his right to contract is necessarily restricted when its exercise is inconsistent with the right of other individuals. No one would dispute the right of each individual to dispose of his own portraits or photographs as he pleases and the validity of any restriction as to that right may well be doubted; but the right of each individual to dispose of and use the portrait or photograph of another is necessarily subject to the right of the person whose portrait or photograph is in question to control the use that is to be made of it. There certainly can be no inherent right in every individual to use without restraint the portrait or photograph of another without regard to the wishes of the person whose photograph or portrait is used. The remedy given to a person whose rights are thus infringed is for the Legislature, but it seems to me that the existence of the right cannot be doubted nor the power of the Legislature to authorize the courts to interfere by an injunction to prevent an abuse of that right be successfully questioned.

Other objections were taken to this statute, one of which is that it impairs the obligation of verbal contracts under which the use of photographs or portraits had been authorized prior to the passage of this act. But the act is not in express terms retroactive nor does it expressly affect such a contract; and, although it might well be that it would be declared inoperative as far as affects contracts which existed at the time it took effect, that would not justify the court in holding the act unconstitutional as affecting contracts made subsequent to its passage. There can be no question as to the right of the

Legislature to require such formalities as that they should be in writing to make contracts enforceable or valid, and the principle established in Fisher Co. v. Woods, supra, does not at all apply to a statute to accomplish such a result. Nor do I think that it is an objection to the statute which requires a person before using the photograph of an infant that he should obtain the consent in writing of the parent or guardian. It is simply an extension of the same principle which regulates the evidence by which a contract to be valid or enforceable is to be proved. Certainly no one has a greater right to use in the conduct of his business or for his own profit the photograph of an infant than one of an adult. The state has charge of the protection of the rights of infants, and can prohibit the use of an infant's photograph or portrait except under such conditions as will prevent an abuse of such use. I can see, therefore, no constitutional objection to this law, and I am of the opinion that it is justified, not only for the protection of the rights of the individual, but from considerations of the public welfare. As no other question is raised by the appellant in his points except as to the constitutionality of this act, no other question has beeen considered.

It follows that the judgment sustaining the demurrer must be affirmed, with costs, with leave to the defendant to amend its answer within 20 days upon payment of costs in this court and in the court below. All concur.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

