## WHITE v. WILLIAM G. WHITE.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

CORPORATIONS (§ 49*)—USE OF NAMES—UNAUTHORIZED USE.

Where plaintiff who built up a flourishing haberdasher trade under his own name, incorporated the business in his name, and it was largely advertised under that name, plaintiff, having transferred his stock in the corporation, cannot, under Civil Rights Law (Consol. Laws, c. 6) § 51, providing that any person whose name is used for advertising purposes without his written consent may maintain an equitable action to restrain such unauthorized use, obtain an injunction restraining the corporation from using his name, having made of it a trade-name, and the right to use it having passed to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

Appeal from Special Term, New York County.

Action by William G. White against William G. White, a corporation. From a temporary restraining order, defendant appeals. Order reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

David Michelsohn, of New York City, for appellant.
Charles R. Rose, of South Amboy, N. J., for respondent.

LAUGHLIN, J. The plaintiff, after having been engaged in business in his own name as a haberdasher retailing men's ware in the borough of Manhattan, New York, and in the city of Newark, N. J., for something like seven years, on November 11, 1910, formed a domestic corporation in his own name for continuing the business. The name of the corporation and the name of the plaintiff are identical. It is conceded that the words "a corporation" in the title of the action form no part of the corporate name of the defendant, and were inserted with a view to indicating that the plaintiff is proceeding against a corporation and not against himself.

The plaintiff had extensively advertised the business in his own name, and at the time of the incorporation he was conducting five stores. He assigned and transferred to the corporation all his right, title, and interest in and to the business which he had theretofore conducted, including the stock on hand and good will, and received therefor $130,000 of the total capital stock of $150,000 of the corporation. He was thereupon elected a director and president of the corporation, and was in general charge of its business and affairs under a large salary, until the 13th day of November, 1913, when he resigned as director and president. He sold part of his capital stock to one Bayer, retaining two-thirds of the entire capital stock, and on September 1, 1911, he and Bayer sold all the capital stock of the defendant to a domestic corporation known as the A. M. F. Company, which paid therefor the book value of the assets of the corporation and in addition thereto the sum of $50,000 for the good will of the business. Part of the consideration was paid by common and preferred stock of the A.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

M. F. Company, and plaintiff still owns and has registered in his name 447 shares of a total issue of 1,211 shares of the first preferred stock, and 250 shares of the second preferred stock, which was all of that stock issued; and he is the largest single owner of first preferred stock, and the owner of all second preferred stock that has been issued.

It is evident that the plaintiff, by thus incorporating in his own name, intended to give the corporation the benefit of the prestige of his name and business. There has been no change in the method and mode of conducting the business since the incorporation from the manner in which it was conducted by him individually before. All signs, stationery, wrapping paper, boxes, labels, and other forms of advertisement were prior to the incorporation, and have since been, in the same name, and the defendant has expended a large amount of money in advertising the business in that name. On account of the name, the personal pronoun has always been used in the advertisements, and in connection with the business; and this practice was continued by plaintiff while he conducted the business for the corporation, and the right of the defendant so to advertise and conduct its business was not questioned by him until he severed his official connection therewith, as stated.

On selling his stock to the A. M. F. Company, the plaintiff entered into an agreement by which he bound himself not to enter into any business, or become connected with any business, under his name, or any name substantially similar thereto, within the United States, excepting in New Mexico, so long as the A. M. F. Company continues to own the entire capital stock of the defendant.

Plaintiff has not attempted to resume business, and therefore there is no evidence and could be no claim of unfair competition. The only basis claimed for this action is section 51 of the Civil Rights Law (Consol. Laws, c. 6), which provides as follows:

"Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use, and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages."

It is perfectly plain, I think, that plaintiff is not entitled to the benefit of the provisions of that statute, for by his own voluntary act he has given the defendant his name and the right to use it.

It follows that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.