STEPHEN K. McNULTY, Plaintiff, *v.* PRESS PUBLISHING COMPANY and Another, Defendants.

Supreme Court, New York County, March 20, 1930.

*Isidor Tow*, for the plaintiff.

*Jackson, Fuller, Nash & Brophy*, for the defendants.

WALSH, J.   This is a motion to dismiss the first and second causes of action set up in the complaint on the ground that neither of said causes of action states facts sufficient to constitute a cause of action.   The first cause of action is for libel.   It alleges that the plaintiff is an artist model, and that the defendant Webster is an artist or cartoonist employed by the defendant's newspaper *The World* to make drawings and write articles of a humorous character for it.   It alleges the malicious publication in said newspaper of a cartoon entitled " The Boy Who Made Good," which contains a photographic reproduction of plaintiff, and also certain printed matter purporting to be uttered by other characters in said cartoon as follows:

" *Fifth.* That on the 7th day of November, 1929, the defendant, Harold T. Webster, maliciously composed for publication and the defendant, The Press Publishing Company, maliciously published in said newspaper a certain cartoon, or humorous drawing entitled ' The Boy Who Made Good,' and containing plaintiff's photographic reproduction together with certain printed matter pur-. porting to be uttered by other characters in said cartoon as follows:

" ' Paw, it's th' livin' breathin' image of Elmer!   An' don't he look han'some in his new golf suit!   My stars an' body! '

" ' A boy's get tew be purty prominent tew git his pitcher printed in a magazine.   I knowed Elmer would make good when he got up tew th' City.'

" ' Gee Whillikers! ' "

It is further alleged that the defendant The Press Publishing Company caused the republication of said cartoon in other newspapers throughout the United States and elsewhere, and that the statements contained in said publication were calculated to and did hold plaintiff up to ridicule and contempt, and greatly injure him in his reputation, to his damage in the sum of $50,000.

It will be noted that, though it is alleged that the cartoon contained a photographic reproduction of plaintiff and also certain printed matter as above quoted, there is no allegation in the pleading that the printed matter in any wise referred to, or was spoken of and concerning, him.   Hence the only charge is that of incorporating in a cartoon a photographic reproduction of plaintiff. It would seem, therefore, that, in the absence of allegation connecting the photographic reproduction of plaintiff with the printed matter, the complaint is defective.

Assuming, however, that it might be inferred that the name "Elmer" in the printed matter referred to the photograph of the plaintiff, the statements and photograph of plaintiff taken together are not libelous *per se*. They may possibly subject him to unpleasant annoyance and banter, but nothing therein contained in any wise injuriously affects his reputation. (*Lamberti* v. *Sun Printing & Publishing Assn.*, 111 App. Div. 437; *Hughes* v. *New York Evening Post Co.*, 115 id. 611, 612; *Hughes* v. *New York Times Co.*, 119 id. 896; *Cohen* v. *New York Times Co.*, 153 id. 242.) In such case no cause of action is set forth, unless the complaint alleges some pecuniary damage which necessarily and as a legal result flowed from the publication, and fully and specifically sets forth facts showing that such damage has been sustained. (*King* v. *Sun Printing & Publishing Assn.*, 84 App. Div. 310; *Langdon* v. *Shearer*, 43 id. 607; *Bassell* v. *Elmore*, 48 N. Y. 561.) No facts showing such special damage are here alleged.

The second cause of action is for damages for disturbing plaintiff's privacy in the use of his picture for the purposes of trade without his consent. The allegations of this count are in substance to the effect that the defendants, for a personal gain and profit, sell the cartoons of the defendant Webster to others, and that in connection with the business of so furnishing such cartoons to others they have caused the picture of plaintiff to be reproduced in other newspapers.

Section 50 of the Civil Rights Law provides: " A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

In section 51 (as amd. by Laws of 1921, chap. 501) it is provided that any person whose name, portrait or picture is used within this State for advertising purposes or for the purposes of trade, without such consent, may maintain an equitable action to prevent and restrain the use thereof, and to recover damages for such unlawful use. While the statute does not prohibit a newspaper from using or publishing in a single issue the name and picture of a person without his consent having first been obtained (*Moser* v. *Press Publishing Co.*, 59 Misc. 78), the charge is not confined to such use, but includes also the sale by the defendants to others, for profit, of cartoons containing plaintiff's picture. This is a use " for the purposes of trade," and prohibited by statute.

Motion granted as to the first cause of action; denied as to the second.