**Dr. Richie HERINK, Plaintiff,**

v.

**HARPER & ROW PUBLISHERS, INC. and Gifford Pinchot, Defendants.**

No. 85 Civ. 2484–CLB(WP).

United States District Court, S.D. New York.

April 29, 1985.

Spellman & Joel, White Plains, N.Y., for plaintiff.

Lankenau, Kozner & Bickford, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendants in this diversity action for damages and injunctive relief are the publisher and author, respectively of a book entitled "Intrapreneuring-Why You Don't Have to Leave the Corporation to Become an Intrapreneur." The book, consisting of approximately 350 pages defines an "Intrapreneur" as "any of the 'dreamers who do', those who take hands-on responsibility for creating innovation of any kind within an organization. The intrapreneur may be the creator or inventor but is always the dreamer who figures out how to turn an idea into a profitable reality."

Plaintiff, Dr. Richie Herink, is apparently regarded by the author as an intrapreneur. He is referred to only in pages 97 through 100 under a subheading entitled "Profile, RICHIE HERRINK: (sic) Selling to Your Own Company." There follows a short vignette referring to plaintiff as "Richie", and describing his "success story" as an executive with the International Business Machines Corporation ("IBM").

No purpose will be served in quoting the article in full. Essentially it appears to portray plaintiff as an aggressive and creative builder of an internal educational empire within IBM, who worked long hours, and after "two years of fantastic success" found his internal organization [which] crossed corporate boundaries," terminated as a result of "what may seem like bureaucratic bumbling [but] is probably corporate wisdom". The author pointed out that thereafter plaintiff and his immediate superior were made head of a "new division of IBM, Technology Management Education which will be responsible for education companywide". The vignette ends with the following: "as Richie Herrink put it, 'we are answering a higher calling' ".

The Complaint filed April 1, 1985 alleges a count said to arise under Section 51 of the New York Civil Rights Law for the unauthorized use of plaintiff's name for advertising purposes and for purposes of

trade without written consent. Complaint, ¶ 4. The Complaint contains a second count against Pinchot only, which seems to allege defamation, invasion of privacy and injury to reputation by having portrayed plaintiff in a false light, and charges that:

> "by assigning inferences to plaintiffs' actions which are untrue defendant Pinchot has given an impression that plaintiff is an IBM employee run amok; a person interested solely in individual gain and success. Plaintiff's reputation among his peers and among the business community in general has suffered greatly by the constant misspelling of his name, by the inferences drawn from his profile as written by defendant Pinchot and by illusions created by defendant Pinchot which are not based on fact." Complaint ¶ 12.

The third count, pleaded only against Harper & Row apparently also alleges a false light claim.

Plaintiff demands exemplary damages in the amount of $1,500,000, and an injunction prohibiting the sale distribution and advertising of the book, and its recall, together with damages for unjust enrichment by having appropriated "plaintiff's name and reputation," together with attorneys fees.

Essentially plaintiff's grievance as amplified in his attorney's affidavit filed April 19, 1985 seems to be that his name was misspelled, that he is not an "intrapreneur" within IBM, and that the article was in some way hurtful to him in his business relations with his colleagues.

By order to show cause issued April 1, 1985 plaintiff sought a preliminary injunction to prevent further distribution of the book and to recall some 77,000 copies extant in customary trade channels. By motion filed April 10, 1985, defendants moved to dismiss the complaint and for sanctions for having brought it, and the motion for a preliminary injunction, in violation of Rule 11, F.R.Civ.P. Both motions were heard and fully submitted on April 23, 1985.

A copy of the book has been submitted and read in support of the motions. The work appears to be a nonfrivolous hard cover nonfiction book intended to be read by corporate executives. In essence it is a "self-help" volume which seeks to advise and assist executives of large corporations to avoid the inhibiting effect of intracorporate bureaucracy and hardened corporate arteries upon original thought and the opportunity to experiment with innovations. Essentially, readers are urged to conceive of an idea for an internal improvement in services to be rendered to their own enterprise, and are instructed, with reference to case histories, how to implement such a project and make it succeed, to their own career advantage first, but also to the ultimate benefit of the corporations. Intrapreneuring, a term invented apparently by the author, can but need not necessarily lead to the development of new products or better ways of doing things.

Since the truth of the profile cannot be ascertained on this motion the court assumes that Dr. Herink may have been placed in a false light. Implicit also in the situation is an inference that "intrapreneurs", because self-aggrandizement is at least part of their motivation, are not well received in a large hidebound corporation which may likely be organized on a military model, where employees are expected to be team players, all glory is funneled to the top, and innovations are usually killed in committee.

Use of a person's name or face in a book of this sort is not a violation of Section 51 of the New York Civil Rights Law, and is not, as a matter of law, a "use for the solicitation of patronage for a particular service or product." *Pagan v. New York Herald Tribune*, 32 A.D.2d 341, 343, 301 N.Y.S.2d 120 (1st Dep't.1969), *aff'd* 26 N.Y.2d 941, 310 N.Y.S.2d 327, 258 N.E.2d 727 (1970). The advertising purposes prong of Section 51 is not violated where the use of a plaintiff's name is not designed primarily to solicit purchasers for defendant's products. See *Lerman v. Flynt Distributing Co. Inc.*, 745 F.2d 123, 130 (2d Cir.1984), applying New York law. Neither does the fact that a writer or publisher

has a profit motive or a motive to increase circulation by using the name of a private citizen violate the trade purposes prong of the New York Civil Rights Law provided the content of the writing is informative or newsworthy. *Id.* The observations of an author concerning the internal corporate bureaucracy at IBM, and a report as to how its perceived inhibiting affect was evaded by Dr. Herink, are both informative and newsworthy. Were § 51 of the New York Civil Rights Law to read on these facts, it would be violative of the First Amendment to the United States Constitution. *See Stephano v. News Group Publishing,* 98 A.D.2d 287, 470 N.Y.S.2d 377 (1st Dep't.1984) (Asch, J. dissenting).

 The Complaint as now presented to this Court does not plead a false light or defamation claim. It is not the function of this Court to rewrite the complaint, or construe it to be such. It is far from clear that the profile read as a whole is other than laudatory, or that it contains any actionable innuendo of the sort which would tend to degrade or prejudice the plaintiff in the eyes of the community. If plaintiff wishes to plead such a claim under New York Law, the particular words said to be defamatory must be alleged, and special damages in excess of $10,000 would also have to be pleaded. *Ladany v. William Morrow Co. Inc.,* 465 F.Supp. 870, 875 (SDNY 1978).

■ There is no common law claim for invasion of privacy under New York law beyond § 51 of the New York Civil Rights Law *Lerman v. Flynt Distributing Co. Inc., supra* at 129.

■ The motion for a preliminary injunction must be denied since there is no likelihood of success at trial on so much of the complaint as is founded on § 51 of the New York Civil Rights Law, and because equity will not enjoin a libel. *Brandreth v. Lance,* 8 Paige 24 (NY 1839).

Defendant's motion for summary judgment dismissing the First Count is granted. The Second and Third Counts are dismissed for failure to state a claim, with leave to

replead within thirty (30) days if so advised, and if such a pleading can be signed without violating Rule 11. Court declines at this time to make the finding contemplated by Rule 54(b), F.R.Civ.P.

Since we are not absolutely certain that this complaint cannot be repleaded as a defamation action, the Court is reluctant at this time to impose sanctions upon plaintiff. To do so might have the effect of chilling access to the Courts by others. So much of the defendant's motion which seeks sanctions is denied with leave to renew depending on the future course of the litigation.

So Ordered.